# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer *RRP* | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 1286 | **DATE** | March 21, 2011 |
| **CASE TITLE** | Elsworth Humphrey (2010-0110150) vs. Thomas Dart, et al. | | |

**DOCKET ENTRY TEXT**

Plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. No. 3), is granted. The court authorizes and orders Cook County Jail officials to deduct $30.67 from Plaintiff's account, and to continue making monthly deductions in accordance with this order. The Clerk shall send a copy of this order to the Supervisor of Inmate Trust Fund Accounts, Cook County Dept. of Corrections Administrative Office, Division V, 2700 S. California, Chicago, Illinois 60608. On the court's own motion, the complaint is dismissed as to Defendant Mueller pursuant to 28 U.S.C. § 1915A. The Clerk is directed to issue summonses for all other Defendants. The Clerk is also directed to send the Plaintiff a magistrate judge consent form and filing instructions along with a copy of this order. The United States Marshals Service is appointed to serve Defendants. The Marshal is authorized to mail a request for waiver of service to Defendants in the manner prescribed by FED. R. CIV. P. 4(d)(2) before attempting personal service.

■[ For further details see text below.]      Docketing to mail notices.

## STATEMENT

    *Pro se* Plaintiff Elsworth Humphrey, an inmate in the custody of the Cook County Department of Corrections, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court are Plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. No. 3), and his complaint (Dkt. No. 1), for an initial review pursuant to 28 U.S.C. § 1915A.

    Plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. No. 3), is granted. Pursuant to 28 U.S.C. § 1915(b)(1), Plaintiff is assessed an initial partial filing fee of $30.67. The supervisor of inmate trust accounts at the Cook County Jail is authorized and ordered to collect, when funds exist, the partial filing fee from Plaintiff's trust fund account and pay it directly to the Clerk of Court. After payment of the initial partial filing fee, the trust fund officer at Plaintiff's place of confinement is directed to collect monthly payments from Plaintiff's trust fund account in an amount equal to 20% of the preceding month's income credited to the account. Monthly payments collected from Plaintiff's trust fund account shall be forwarded to the Clerk of Court each time the amount in the account exceeds $10 until the full $350 filing fee is paid. All payments shall be sent to the Clerk, United States District Court, 219 S. Dearborn St., Chicago, Illinois 60604, attn: Cashier's Desk, 20th Floor, and shall clearly identify Plaintiff's name and the case number assigned to this action. The Cook County inmate trust account office shall notify transferee authorities of any outstanding balance in the event Plaintiff is transferred from the Jail to another correctional facility.

    Plaintiff alleges that he has been detained at Division Ten of the Cook County Jail since entering the Jail on January 10, 2010. (Dkt. No. 1 at 4.) Division Ten is a maximum security division that houses detainees with serious medical and mental health issues. (*Id*.).

| STATEMENT |
|---|

Plaintiff was housed in a cell with Leroy Coyburn. Plaintiff alleges that Coyburn is mentally ill and that he showed various signs of illness, including hearing voices, rocking back and forth, being very agitated and irritable, and looking for UFOs. (*Id*. at 8.) Plaintiff reported this strange behavior to Defendant Correctional Officer Toledo, but Toledo merely laughed and walked away. (*Id*.). On June 3, 2010, Coyburn experienced a psychotic event and attacked Plaintiff, slamming his head against the wall and beating him for approximately four minutes after Plaintiff fell to the ground. (*Id*. at 9.) Plaintiff screamed for help to Defendant Correctional Officer Carvajal, but he took no action. (*Id*.). After some time, another detainee named Larry came to investigate; at this point Coyburn stopped assaulting Plaintiff. (*Id*.). Plaintiff claims that he suffered a fractured jaw and injuries to his face, neck, knee, foot and right shoulder. (*Id*. at 9-10.) Although he did received treatment for his injuries after the attack, Plaintiff alleges that his jaw is permanently damaged, that he was restricted to a liquid diet for a period of time, and that he continues to suffer pain from his various injuries. (*Id*.

According to Plaintiff, the June 3rd assault is not an isolated incident in Division 10 but instead is an example of mismanagement at the Jail. He alleges that dangerous inmates are not segregated from vulnerable inmates, that the Jail is understaffed, and that correctional officers are required to engage in the unsafe practice of "cross watching" — that is, watching a unit while another guard is on a break or lunch. (*Id*. at 4, 5.) The mentally ill detainees are also not receiving necessary treatment, supervision or medication needed to reduce the risk of attacks.

Plaintiff alleges that Defendants Cook County Sheriff Tom Dart, Jail Executive Director Salvador Godinez, Jail Chief Medical Officer Avery Hart, and Chief Operating Officer of Cermak Health Services David Fagus have been warned of these various problems and have intentionally failed to take any corrective actions. The warnings these Defendants ignored include a 2006 United States Department of Justice report and memoranda from medical health professional recommending needed improvements. Finally, Plaintiff alleges that Defendant John Mueller intentionally interfered with his efforts to raise his claims via the Jail's grievance process and that such interference was also recognized by the DOJ report as an ongoing problem. (Dkt. No. 1 at 10-11.) Plaintiff names the Defendants in their individual and official capacities, seeks improvements at the Jail, and $250,000 in compensatory damages and $300,000 in punitive damages.

The court concludes these allegations survive initial review. Plaintiff has alleged a constitutional claim against Dart, Godinez, Hart, Fagus, Toledo and Carvajal in their individual capacity regarding the allegedly deliberate indifference to the known risk of assault from another detainee. Prison officials must protect detainees from assaults from other detainees, and the official violates the Constitution if he is aware of a substantial risk of injury to the detainee but fails to take appropriate steps to protect the detainee from the known danger. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *Guzman v. Sheahan*, 495 F.3d 852, 856-57 (7th Cir. 2007); *Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002). Plaintiff alleges that he told Defendant Correctional Officer Toledo of the risk presented by Coyburn, but Toledo failed to take any actions to protect Plaintiff. And Defendant Carvajal allegedly stood by while Coyburn was beating Plaintiff despite Plaintiff's screams for help.

As to Defendants Dart, Godinez, Hart and Fagus, the Court recognizes that these are supervisory Defendants who were not present during June 3rd attack. But this is not dispositive on the claim because Plaintiff alleges that Defendants have willfully ignored various warnings regarding the alleged unsafe conditions in Division Ten. "Section 1983 lawsuits against individuals require personal involvement in the alleged constitutional deprivation to support a viable claim." *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003) (citing *Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000); *Zentmyer v. Kendall County, Ill.*, 220 F.3d 805, 811 (7th Cir. 2000); *Davis v. Zirkelbach*, 149 F.3d 614, 619 (7th Cir. 1998)).

| STATEMENT |
|---|

Agency principles of *respondent superior* and vicarious liability do not apply to § 1983 claims. *Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008) (citing *Monell v. New York City Dep't Soc. Servs.*, 436 U.S. 658, 691 (1978); *Hosty v. Carter*, 412 F.3d 731, 733 (7th Cir. 2005)); *see also Iqbal*, 129 S. Ct. at 1948 ("[P]laintiff must plead that each government official [D]efendant, through the official's own individual actions, has violated the Constitution."). Supervisors do, however, violate the Constitution resulting in their own individual liability if they "know about the unconstitutional conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010) (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)). Plaintiff alleges that Dart, Godinez, Hart, and Fagus have knowingly permitted creation of this dangerous environment which led directly to the assault and his injuries. The court concludes these allegations are sufficient, at this stage, for Plaintiff to proceed against these Defendants in their individual capacity. *See T.E.*, 599 F.3d at 590-91 (supervisor may be liable for decisions which resulted in creating an atmosphere that allowed abuse to flourish); *Chavez v. Illinois State Police*, 251 F.3d 612, 652 (7th Cir. 2001) (supervisor is liable when he directed the conduct causing the constitutional violation); *Jones*, 856 F.2d at 993 ("In constitutional tort cases as in other cases, a man is responsible for the natural consequences of his actions.") (citations omitted).

Plaintiff's claim against Defendant Mueller regarding the alleged interference with his grievances must be dismissed, however. Although the question of whether Mueller interfered with Plaintiff's grievance can implicate whether Plaintiff has exhausted his available grievances at the Jail, there is no free-standing constitutional right to an effective prison grievance procedure. *Grieveson v. Anderson*, 538 F.3d 763, 772 (7th Cir. 2008); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Plaintiff does not plausibly suggest that Mueller's alleged actions were taken in retaliation, limited his First Amendment rights or otherwise implicated his right to access the courts. *Bridges v. Glibert*, 557 F.3d 541, 553 (7th Cir. 2009).

Plaintiff also names all Defendants in their official capacities. A claim against a municipal official in his or her official capacity is, in actuality, a claim against the municipality. *Minix v. Canarecci*, 597 F.3d 824, 830 (7th Cir. 2010). "A municipality may be held liable for a constitutional deprivation under *Monell*." *Waters v. City of Chicago*, 580 F.3d 575, 580 (7th Cir. 2009) (citing 436 U.S. 658 (1978)). "Misbehaving employees are responsible for their own conduct, 'units of government are responsible only for their policies rather than misconduct by their workers.'" *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007) (quoting *Fairley v. Fermaint*, 482 F.3d 897, 904 (7th Cir. 2007)). "To establish municipal liability under § 1983 . . . a [P]laintiff must present sufficient evidence to show that the constitutional violation resulted from a municipal policy, custom or practice." *Waters*, 580 F.3d at 580 (citing *Monell*, 436 U.S. at 694). "To establish an official policy or custom, a plaintiff must show that his constitutional injury was caused by (1) the enforcement of an express policy of the [municipality], (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority." *Wragg v. Vill. of Thornton*, 604 F.3d 464, 467-68 (7th Cir. 2007) (citing *Latuszkin v. City of Chicago*, 250 F.3d 502, 504 (7th Cir. 2001); *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000)). Plaintiff has established a plausible *Monell* claim under the widespread practice or custom ground. He has alleged with plausible facts that the June 3rd assault was the result of a "general pattern of repeated behavior" of mismanagement at the Jail and is more than a "mere isolated event." *Davis v. Carter*, 452 F.3d 686, 694 (7th Cir. 2006). Plaintiff may proceed on a *Monell* claim as to the failure to protect him from the allegedly known risk of violence from his mentally ill cellmate.

Finally, Plaintiff may proceed on his claim for punitive damages against Defendants only in their individual capacity. He may not proceed against a government official in his official capacity for punitive damages because municipalities are not subject to punitive damages in § 1983 suits. *Robinson v. City of Harvey, Ill.*, 617 F.3d 915, 916 (7th Cir. 2010) (citing *Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981)).

| STATEMENT |
|---|

The Clerk shall issue summonses for service of the complaint as to Defendants Dart, Godinez, Hart, Faqus, Toledo and Carvajalo. Defendant Mueller is dismissed for this action pursuant to 28 U.S.C. § 1915A. The Clerk shall also send Plaintiff a Magistrate Judge Consent Form and Instructions for Submitting Documents along with a copy of this order.

The United States Marshals Service is appointed to serve Defendants. Any service forms necessary for Plaintiff to complete will be sent by the Marshal as appropriate to serve Defendants with process. The U.S. Marshal is directed to make all reasonable efforts to serve Defendants. With respect to any former jail employee who can no longer be found at the work address provided by Plaintiff, the Cook County Department of Corrections shall furnish the Marshal with Defendant's last-known address. The information shall be used only for purposes of effectuating service [or for proof of service, should a dispute arise] and any documentation of the address shall be retained only by the Marshal. Address information shall not be maintained in the court file, nor disclosed by the Marshal. The Marshal is authorized to mail a request for waiver of service to Defendants in the manner prescribed by FED. R. CIV. P. 4(d)(2) before attempting personal service.

Plaintiff is instructed to file all future papers concerning this action with the Clerk of Court in care of the Prisoner Correspondent. Plaintiff must provide the court with the original plus a complete Judge's copy, including any exhibits, of every document filed. In addition, Plaintiff must send an exact copy of any court filing to Defendants [or to defense counsel, once an attorney has entered an appearance on behalf of Defendants]. Every document filed with the court must include a certificate of service stating to whom exact copies were mailed and the date of mailing. Any paper that is sent directly to the Judge or that otherwise fails to comply with these instructions may be disregarded by the court or returned to Plaintiff.